Paul E. Manasian (130855)
LAW OFFICE OF PAUL E. MANASIAN
1310 65th Street
Emeryville, California 94608
Tel: (415) 730-3419
Email: manasian@mrlawsf.com

Counsel for Plaintiffs  GREENLIGHT  SYSTEMS, LLC
and ORBITAL ASSETHOLDINGS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREENLIGHT SYSTEMS, LLC, an Ohio limited liability company; ORBITAL ASSET HOLDINGS, INC,  a California Corporation<br><br>                    Plaintiffs,<br><br>        v.<br><br>Erik Breckenfelder, an individual<br>.<br>                    Defendant. | **COMPLAINT**<br><br>1.  **Fraud (Intentional Misrepresentation)**<br>2.  **Breach of Contract**<br>3.  **Declaratory Relief**<br>4.  **Injunctive Relief**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs GreenLight Systems, LLC ("GreenLight") and Orbital Assets Holdings, Inc.

("Orbital") allege against Defendant Erik Breckenfelder ("Breckenfelder") as follows:

**INTRODUCTION**

This is an action for damages and for an injunction arising out of Defendant Breckenfelder's

fraudulent inducement of GreenLight's entry into a contract with Defendant Breckenfelder

whereby Defendant Breckenfelder would lead GreenLight's sales efforts for the sale of its

customer service software to automotive dealers for use in their service departments.

Defendant falsely represented that he had the skill, professional contacts,expertise, and

capacity to provide the sales GreenLight contracted to receive.  Plaintiffs seek damages for the

losses suffered as a result of Defendant's fraudulent misrepresentation and breach of contract,

COMPLAINT FOR FRAUD, BREACH OF CONTRACT, DECARATORY RELIEF, AND INJUNCTION

and injunctive relief to compel Defendant to comply with the post-termination provisions of the contract.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. Section 1332 in that the amount in controversy exceeds $75,000 and the parties are citizens of different states.

2.  Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(b)(2) and (3).  Venue in this jurisdiction is also proper because it was contractually agreed upon by the parties.

## INTRADISTRICT VENUE

3.  Pursuant to Civil L.R. 3-2(c)-(d) & 3-5, this is an action in a non-excepted category suitable for assignment to the San Francisco or Oakland divisions because the civil action arose in part in Marin County, California and the parties contractually had agreed to venue for disputes in San Francisco, California.

## PLAINTIFFS

4.  Plaintiff GreenLight is and was at all times relevant to this Complaint an Ohio Limited Liability Company.

5.  Plaintiff Orbital Assets Holdings, Inc. is and was at all times relevant to this Complaint a California Corporation, with its principal place of business in Sausalito, Marin County, California.

## DEFENDANT

6.  Plaintiff is informed and believes that Defendant Breckenfelder is a resident of Illinois.

## FACTUAL BACKGROUND

7.  Beginning in 2015, Orbital began to develop software consisting of a suite of tools for auto dealers to use in managing their service departments and interacting with their service department customers.  From 2015 until 2018 Orbital engaged software developers, consultants, and business advisors to build and design the software (the "GreenLight Software").  Orbital has expended substantial sums in developing the

-2-

GreenLight Software since the inception of the project in 2015.  Andrew D.B. Rowen ("Rowen") is the president of Orbital.  Since 2015 Rowen and his team (the "GLA Team") have interacted with a number of auto dealerships and industry professionals to refine and improve the GreenLight Software to best meet industry needs.  By the end of 2018, the GLA Team concluded that the GreenLight Software was fully functional and had been refined to meet the specific needs of the target market, namely the service departments of automotive dealerships.

8.   Beginning in January 2019 the GLA Team began to seek a lead sales person to act as sales manager for the rollout of the GreenLight Software.    The sales manager position would be critical to the success of the GreenLight Software, as it was a new product in the market and required that the sales manager fully understand both the software itself as well as the specific needs of the service departments of automotive dealerships.  As such, the sales manager would need to have extensive contracts in the automotive dealer market, a proven track record of success in selling software to dealerships, and an understanding and familiarity with automotive dealership software sufficient to comprehend and convey the unique capabilities and benefits offered by the GreenLight Software.  The sales manager would focus exclusively on generating sales and would not be involved in other aspects of management.

9.   The GreenLight Team searched for a qualified candidate for the sales manager position from January to April 2019, primarily through the use of ads on internet "job boards" and searches on the LinkedIn platform.  The LinkedIn searches were made through highly targeted searches seeking candidates meeting the specific expertise required to roll-out the GreenLight Software.

10. In April 2019 the GreenLight Team used a targeted LinkedIn search intended to generate candidates who were "high performing automotive software salespeople in the Chicago/LA/Dallas/Florida markets." Among the LinkedIn profiles retrieved by this search was Defendant Breckenfelder's profile. The GreenLight Team contacted Defendant Breckenfelder who expressed an interest in the GreenLight sales manager opportunity. An introductory call between the GreenLight Team and Defendant Breckenfelder took place on April 19, 2019, and emails were exchanged between Defendant Breckenfelder and the GreenLight Team.

11. Following the introductory call on April 19, 2019, the GreenLight Team and Defendant Breckenfelder engaged in negotiations regarding Defendant Breckenfelder's potential retention as GreenLight's sales manager. These negotiations were conducted by numerous telephone conversations and email correspondence and an agreement to retain Defendant Breckenfelder, the "GreenLight Systems Employment Contract," was signed by both GreenLight and Defendant Breckenfelder on June 23, 2019. A true and correct copy of the GreenLight Systems Employment Contract (the "Breckenfelder Contract") is attached hereto as Exhibit A.

12. Throughout the period of negotiations set forth above, Defendant Breckenfelder repeatedly made the following representations to the GreenLight Team which were relied on by GreenLight in entering into the Breckenfelder Contract and in the operation of GreenLight: that through his prior employment in the automotive dealership software industry, he had the ability to gain immediate access to the "decision makers" at thousands of automotive dealerships, that he fully understood the GreenLight Software which had been demonstrated to him and he appreciated the

value which it brought to potential dealership customers, and that his primary concern was that GreenLight would not be able to scale its installation and support Teams adequately to meet the number of sales that Defendant Breckenfelder would bring to GreenLight.  Defendant Breckenfelder represented that at his present employer he had grown the installation of their software from nine dealership customers to two-thousand customers in three years. Defendant Breckenfelder represented that he had extensive contacts with the National Auto Dealers Association and "20/20 groups" which he had used to fuel the growth at his present employer and that he was on a "first name basis" with numerous dealership managers and "decision makers."

13. The representations by Defendant Breckenfelder were made to Orbital as well as the GreenLight team, in that Orbital had funded the development of the GreenLight Software, and its president, Rowen, was the leader of the GreenLight Team and was anticipated to become the Chief Executive Officer of GreenLight upon its formation. Plaintiff Orbital relied on Defendant Breckenfelder's representations in the operation of GreenLight.

14. During the negotiations prior to the execution of the Breckenfelder Contract. Defendant Breckenfelder represented that he had substantial resources and that given his claimed ability to grow GreenLight's revenue rapidly and substantially the sales manager position only made sense to him if he had some form of equity participation in the enterprise.  After extensive negotiations, all premised on Defendant Breckenfelder's representations regarding his ability to rapidly generate sales using his extensive contacts,  the Breckenfelder Contract was finalized with provisions that included the issuance of equity to Defendant Breckenfelder:  Defendant Breckenfelder

would have the option to purchase a 2.5% interest in the business for $312,500 and would be issued additional equity upon the business achieving certain benchmark revenue figures.   The Breckenfelder Contract provided that Breckenfelder could exercise the option to purchase equity in GreenLight with an initial, two separate payments of $25,000 out of the total $312,500 purchase price, to be wired to the account of Orbital in California.  The Breckenfelder contract contemplated the formal formation of GreenLight, on August 1, 2019, which in fact occurred on August 7, 2019, and the first payment of $25,000 was sent by Defendant Breckenfelder to Orbital's account at its bank in Marin County, California, on June 24, 2019 and the subsequent payment exactly 14 days alter on July 8, 2019.

15. The Breckenfelder Contract provided that Defendant Breckenfelder would begin employment with GreenLight on August 1, 2019 as a "full time employee" following his anticipated resignation from his then current employer on July 1, 2019.  However, as Defendant Breckenfelder's notice period at his prior was shorter than anticipated Defendant Breckenfelder began his employment with GreenLight on July 9, 2019.

16. Upon his commencement as a GreenLight employee, Defendant Breckenfelder expressed his concern that GreenLight might lack sufficient staffing to be able to keep up with his anticipated rapid sales of the GreenLight Software.  In reliance thereon and in response, GreenLight commenced extensive searches for employees to support Defendant Breckenfelder and expended significant resources in lining up candidates to serve as support for Defendant Breckenfelder's anticipated rapid sales.  GreenLight was fully prepared to "ramp up" for the influx of sales that Defendant Breckenfelder had represented he could and would deliver.

17. Defendant Breckenfelder urged the GreenLight Team to make arrangements to attend an industry trade show in Las Vegas in early 2020.  Defendant Breckenfelder represented that with his extensive industry contacts he would be able to line up sufficient meetings with "decision makers" at dealerships that he would be able to close at least twenty sales at the trade show alone.  In reliance on these representations, GreenLight and Orbital spent significant resources and time preparing in anticipation of the trade show.

18. On July 24, 2019 Defendant Breckenfelder emailed the GreenLight Team to announce that he had secured the Pugi Auto Group in Chicago, Illinois as the initial pilot customer for the GreenLight Software.  In his July 24, 2019 email, Defendant Breckenfelder represented that he had been in contact with "all critical parties" at Pugi Auto Group, including the general manager, the parts manager, and the service manager, and they had verbally agreed to use the GreenLight Software.   In fact, these representations turned out to have been false, and no agreement to install the GreenLight Software at any dealership in the Pugi Auto Group was ever signed.

19. Defendant Breckenfelder represented that Pugi Auto Group had agreed to an installation of the GreenLight Software on August 12, 2019.  A member of the GreenLight Team and Defendant Breckenfelder went to the location of one dealership in the Pugi Auto Group on August 12 and 13, 2019.  During their visits to the Pugi Auto Group location it became clear to the GreenLight team member that the Pugi Auto Group was unfamiliar with the nature of the GreenLight Software, did not understand the concept of a "pilot store", and there had certainly not been an "oral agreement" with "all critical parties" at the Pugi Auto Group, as Defendant

Breckenfelder had represented. No agreement with the Pugi Auto Group was ever signed and it became clear that it was not at all a suitable dealer for the pilot installation of the GreenLight Software as Defendant Breckenfelder had represented.

20. In addition to the Pugi Auto Group, Defendant Breckenfelder located just one other auto dealership as a potential customer for the GreenLight Software, the Zeigler Automotive Group ("Zeigler"), a dealership located in Chicago, Illinois which Defendant Breckenfelder represented to be a potentially major customer. An installation at Zeigler was scheduled for August 19, 2019 and the GreenLight Team spent considerable time and resources to prepare for the installation. On August 19, 2019 Defendant Breckenfelder visited the Zeigler dealership to attempt the installation of the GreenLight Software himself. The installation was unsuccessful as Defendant Breckenfelder was shockingly unfamiliar with the software, notwithstanding that he was at this point a full-time employee of GreenLight who had been given access to the software, with clear instructions to become fully familiar with the software.

21. On August 20, 2019, a member of the GreenLight Team visited the Zeigler dealership with Defendant Breckenfelder to again attempt the installation of the GreenLight Software. Upon arriving at the Zeigler dealership, it became apparent to the member of the GreenLight Team that the dealership was much smaller than Defendant Breckenfelder had represented and GreenLight had agreed to, and was in no way a suitable dealer as an initial pilot location for the GreenLight Software, because there were not enough relevant users for the GreenLight software to be used effectively. Instead, it was a single user and Defendant Breckenfelder simulating the utilization of the GreenLight Software in an attempt to defraud the upper level decision makers of

GreenLight.  Although Zeigler was clearly too small to serve as a pilot location, the GreenLight Team nonetheless installed the GreenLight Software at Zeigler upon the understanding that the software would be used for all repairs done at Zeigler.  In fact, GreenLight later learned that the GreenLight Software was not being used at Zeigler as Defendant Breckenfelder had represented, but instead  it was simply being used by one employee at Zeigler who, working with Defendant Breckenfelder, created false and misleading data regarding the use of the GreenLight Software.

22.  The use of the GreenLight Software at the pilot locations was a critical component of a pilot installation as it would provide real time customer data which could be used to market to dealerships.  This had been previously explained to Defendant Breckenfelder repeatedly.  However, neither of the two locations actually identified by Defendant Breckenfelder, Pugi Auto Group and Zeigler, ever generated any user data which could be used by GreenLight.  Nor did Pugi Auto Group or Zeigler ever sign an agreement to use the GreenLight Software.

23.  Throughout August 2019 until his cessation of work on behalf of GreenLight in late September 2019, Defendant Breckenfelder was contractually committed to working for GreenLight on a full-time basis. However, it became clear to GreenLight that Defendant Breckenfelder was certainly not devoting his full time to GreenLight and was diverting much of his time to other matters, including his work on a high-performance racing speedboat he owns, which seemed to consume much of his energy and time. Defendant Breckenfelder communicated to GreenLight his intention to spend the winter of 2019 in Florida with his racing speedboat.

24. On September 16, 2019, Defendant Breckenfelder purportedly visited Zeigler at which time the use of the GreenLight Software by Zeigler was as represented by Defendant Breckenfelder to go "live" for use with actual customers. Despite Defendant Breckenfelder's representations that he visited Zeigler on September 16, 2019, GreenLight is informed and believes that no such visit took place.

25. On September 17, 2019, it became evident that the use of the GreenLight Software at Zeigler had not gone "live" As had been represented by Defendant Breckenfelder. GreenLight arranged for a conference call between the GreenLight Team and Defendant Breckenfelder for that day, September 17, 2019. During that conference call Defendant Breckenfelder conceded that he had misrepresented the extent of his contacts in the automotive dealership industry, that he was "no longer relevant" to the industry, and that he would struggle to find any other stores to sell the GreenLight Software beyond the two failed stores, Pugi Auto Group and Zeigler. Defendant Breckenfelder stated that he had not personally set foot in the service side of an auto dealership in five years, which was directly contrary to the representations he had made to GreenLightand Orbital. Defendant Breckenfelder asserted for the first time in that conference call that it would be necessary for GreenLight to conduct market research using LinkedIn and a third-party market research firm to identify "leads" to which the GreenLight Software could be sold, the very same "leads" which Defendant Breckenfelder had repeatedly represented to GreenLight and Orbital were in his possession and which were the primary reason GreenLight had contracted with Defendant Breckenfelder and had him assume the role of sales manager rather than other potential candidates.

26. On September 19, 2019 GreenLight and its legal counsel conducted a telephone conference call with Defendant Breckenfelder during which GreenLight confronted Defendant Breckenfelder with his misrepresentations.  During the September 19, 2019 call Defendant Breckenfelder for the first time stated his concern that the GreenLight software may be unattractive to dealers because it did not interact with other software used by dealer service departments such as accounting and inventory software.  In fact, this aspect of the GreenLight Software had previously been explained to Defendant Breckenfelder repeatedly since his first contact with GreenLight and which was an intended "feature" of the software and not a "bug."  Plaintiffs are informed and believe that Defendant Breckenfelder had raised that matter and at that time  in an effort  to deflect or excuse his misrepresentations on  delivery on his many leads and contacts which he had misrepresented to GreenLight and Orbital.

27. On September 23, 2019, a telephone conference between Defendant Breckenfelder and the GreenLight Team took place, during which he was informed that while he was still an employee of GreenLight he would need to assist GreenLight in finding a replacement with the skills and contacts that Defendant Breckenfelder had falsely claimed he possessed.  After that call,  on September 23, 2019, Defendant Breckenfelder emailed GreenLight to submit his resignation as an employee of GreenLight.

28.  On September 25, 2019 a final telephone conference took place between Defendant Breckenfelder and GreenLight, during which GreenLight explained to Defendant Breckenfelder that his misrepresentations had significantly damaged GreenLight and

that he should retain counsel to address how the damage he had caused could be remedied or mitigated.

29.  Following the September 25, 2019 telephone conference call GreenLight never heard from Defendant Breckenfelder directly again, notwithstanding that the Breckenfelder Contract specifically provided that Defendant Breckenfelder was to make himself available following his termination from GreenLight.

30. The Breckenfelder Contract required that upon his resignation or termination he return all "Confidential Information" as defined in the Breckenfelder Contract. No such Confidential Information has been returned by Defendant Breckenfelder.

31. The Breckenfelder Contract also requires that for five years following the termination of his employment, Defendant Breckenfelder keep all Confidential Information "absolutely confidential" and that the disclosure of Confidential Information would cause "irreparable injury" and could not be compensated for in monetary damages. Given his total lack of communication since his departure from GreenLight, GreenLight has no assurance that Defendant Breckenfelder is in fact complying with these contract provisions.

### FIRST CAUSE OF ACTION
#### (Fraud)

32.  Plaintiffs GreenLight and Orbital repeat and reallege each and every allegation of paragraphs 1 through 31 above and incorporate them by reference as if fully set forth herein.

33. Defendant Breckenfelder represented to GreenLight and Orbital, among other matters, that he had extensive contacts in the automotive dealership industry, that he personally knew numerous "decision makers" at dealership stores as well as at many dealership

groups.  He assured GreenLight and Orbital that he could easily close sales to one thousand dealerships by the end of 2021, beginning with one-hundred dealerships in the second half of 2019.

34.  In fact, the representations made by Defendant Breckenfelder were false, as he has very few active contacts in the automotive dealer industry as he has admitted to the GreenLight Team.  Defendant Breckenfelder did not have the contacts and relationships he represented and admitted to the GreenLight Team that he was "no longer relevant" in the industry and that he would be unable to locate another dealership to sell the GreenLight Software other than the two failed stores.

35.  At the time Defendant Breckenfelder made the representations set forth above he knew the representations to be false.

36.  Defendant Breckenfelder made the false representations set forth above with the intention and purpose of causing GreenLight to enter into the Breckenfelder Contract and to induce GreenLight and Orbital to spend significant resources to support Defendant Breckenfelder in his efforts to sell to the numerous contacts in the industry which he falsely claimed to have.  Moreover, Defendant Breckenfelder fully understood that GreenLight was at a critical stage in the development and rollout of the GreenLight Software and that any delays would prevent GreenLight from "scaling up" to a sufficient number of dealership customers such that GreenLight's growth and profitability could rapidly accelerate.

37.  Orbital and Greenlight had GreenLight enter into the Breckenfelder Contract in reliance upon the false representations made by Defendant Breckenfelder.  Had GreenLight and Orbital known the true facts there would not have been a contract

-13-

agreement with Defendant Breckenfelder and  Defendant Breckenfelder would have been hired as an employee or otherwise, and Plaintiffs would have hired another sales manager and would not have spent time and resources in efforts to support Defendant Breckenfelder in his failed efforts.

38.  As a result of their reliance upon the false representation made by Defendant Breckenfelder, Plaintiffs expended significant funds in preparing to "scale up" to the anticipated growth Defendant Breckenfelder had falsely represented he could provide. GreenLight also lost the revenue it would have received had it hired a competent sales manager.  The losses suffered by GreenLight and Orbital as a result of their reliance upon Defendant Breckenfelder's misrepresentations exceed $75,000, and are in fact far more extensive than that amount.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

39.  Plaintiff GreenLight repeats and realleges each and every allegation of paragraphs 1 through 38 above and incorporates them by reference as if fully set forth herein.

40.   Pursuant to the terms of the Breckenfelder Contract, Defendant Breckenfelder was promised and was required to spend his full time efforts performing services for GreenLight.  In fact, Defendant Breckenfelder spent considerably less than his full time working for GreenLight during the term of his employment.

41.  Pursuant to the terms of the Breckenfelder Contract, Defendant Breckenfelder was to make himself available to GreenLight following his termination from GreenLight, but Defendant Breckenfelder has failed to do so.

42. Pursuant to the terms of the Breckenfelder Contract, upon his termination from GreenLight, Defendant Breckenfelder had promised and was required to return all "Confidential Information" (as defined in the Breckenfelder Contract) in any form to GreenLight. Defendant Breckenfelder has failed to return any Confidential Information to GreenLight.

43. GreenLight has performed all actions it was required to perform under the Breckenfelder Contract or been relieved of such performance by Defendant Breckenfelder's fraudulent inducement to enter into that contract and/or breach of that contract.

44. As a result of Defendant Breckenfelder's breach of the Breckenfelder Contract, GreenLight has been damaged in an amount in excess of $75,000 in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**(Declaratory Relief)**

45. Plaintiffs GreenLight and Orbital repeat and reallege each and every allegation of paragraphs 1 through 44 above and incorporate them by reference as if fully set forth herein.

46. Plaintiffs GreenLight and Orbital seek a judicial declaration that Defendant Breckenfelder holds no equity interest in GreenLight and is not entitled to any benefits as an employee of GreenLight due to his fraud in inducing GreenLight to enter into the Breckenfelder Contract.

47. Plaintiff GreenLight seeks a judicial declaration that the confidentiality provisions of the Breckenfelder Contract remain in full force and effect and are binding on Defendant Breckenfelder notwithstanding his resignation from GreenLight.

48. An actual and justiciable controversy exists in that Plaintiffs GreenLight and Orbital contend that Defendant Breckenfelder has no equity interest in Plaintiff GreenLight and is not entitled to any benefits as an employee of Greenlight, and Greenlight contends that the confidentiality provisions of the Breckenfelder Contract remain in full force and effect, while Plaintiffs are informed and believe that Defendant Breckenfelder disputes the contentions of Plaintiffs.

## FOURTH CAUSE OF ACTION
### (INJUNCTION)

49. Plaintiffs GreenLight and Orbital repeat and reallege each and every allegation of paragraphs 1 through 48 above and incorporate them by reference as if fully set forth herein.

50. Pursuant to the Breckenfelder Contract all "Confidential Information" in the possession of Defendant Breckenfelder is to be returned to GreenLight upon the termination of his employment. In fact, Defendant Breckenfelder has returned no Confidential Information to GreenLight.

51. Pursuant to the Breckenfelder Contract, Defendant Breckenfelder is required to keep all "Confidential Information" strictly in confidence for five years after the termination of his employment with GreenLight.  Based upon Defendant Breckenfelder's prior dishonesty, GreenLight is concerned that Defendant Breckenfelder will not and has not complied with the requirement to keep all Confidential Information in strict confidence as required by the Breckenfelder Contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff s GreenLight Systems, LLC and Orbital Assets Holdings, Inc. pray for judgment against Defendant Erik Breckenfelder as follows:

A.  As to the First Cause of Action:

    (i)     general, compensatory, and special damages according to proof;

    (ii)    punitive damages according to proof;

B.  As to the Second Cause of Action:

    (i)     general, compensatory, and special damages according to proof;

C.  As to the Third Cause of Action:

    (i)     a judicial declaration by this Court that Defendant Breckenfelder has no equity interest in GreenLight Systems, LLC and is not entitled to any benefits as an employee of Greenlight Systems,LLC.;

    (ii)    a judicial Declaration by this Court that the confidentiality provisions of Breckenfelder Contract are in full force and effect and binding upon Defendant Breckenfelder.

D.   As to the Fourth Cause of Action:

    (i)     an injunction requiring that Defendant Breckenfelder return all "confidential information" as defined in the Breckenfelder Contract to GreenLight Systems, LLC;

    (ii)    an injunction requiring Defendant Breckenfelder comply with all confidentiality provisions of the Breckenfelder Contract.

E.  As to all causes of action, such relief as the Court deems just and proper

.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiffs demands trial by jury in this action of all issues so triable.

Dated: October 16, 2019

LAW OFFICE OF PAUL E. MANASIAN

By:   */s/ Paul E. Manasian*
Attorney for Plaintiffs GreenLight
Systems, LLC and Orbital Asset
Holdings, Inc.